```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICHARD SMOLOWITZ and ROSE          :
SMOLOWITZ,                          :
                                    :          NOT FOR PUBLICATION
            Plaintiffs,             :          MEMORANDUM & ORDER
                                    :
            -against-               :
                                    :
THE SHERWIN-WILLIAMS COMPANY,       :          02-CV-5940
et al.,                             :
                                    :
            Defendants.             :
                                    :
----------------------------------------------------------X
```

AMON, United States District Judge:

Plaintiffs Richard and Rose Smolowitz filed this action against a large number of paint manufacturers for injuries allegedly caused by Richard Smolowitz's exposure to benzene and benzene-containing products manufactured by defendants. Defendants removed the action to this Court on the basis of diversity jurisdiction. Plaintiffs' claims for relief are based upon negligence, strict products liability, breach of warranty, breach of duty to warn, distribution of an abnormally dangerous product, and loss of consortium. Defendants The Sherwin-Williams Company, Martin-Senour Paints, Mercury Paint Co., Pratt & Lambert United, Inc., Benjamin Moore & Co., and PPG Industries, Inc.[1] have filed the instant motion to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute or to comply with a court order or, alternatively, for summary judgment pursuant to Rule 56(b). For the following reasons, the Court grants defendants' motion for summary judgment.

---

[1] The remaining defendants have already been dismissed from this case. They are Dutch Boy, Inc., Alco Industries, Inc., Morton Paint Co., U.S. Chemical Industries, Inc., RPM, Inc., Rust-Oleum Corp., NL Industries, Inc., Kronos (US) Inc., E.I. Du Pont de Nemours & Co., Ameron International, Inc., and General Coatings, Inc.

–1–

BACKGROUND

Plaintiff Richard Smolowitz worked as a drywall taper and spackler over a thirty year period beginning in the 1950s and ending in the early 1980s. Although he was not a painter, he worked in areas where paint products were regularly used. Plaintiff alleges that his exposure to benzene caused him to contract myelodysplastic syndrome ("MDS"). Although he cannot remember the specific paint products to which he was exposed, plaintiff recalls seeing defendants' brand names on some of the paints that were used on his jobs.

It is undisputed that none of the defendants uses benzene as an ingredient or component of its paints. The solvents used in defendants' oil based paints, however, may contain a trace contamination of benzene due to the fact that the products are based on petroleum and it is not always possible to remove all of the benzene during the manufacturing process. A central factual issue in this case, therefore, is the level of exposure to which plaintiff was subject, and whether that level of exposure can cause MDS.

On September 5, 2006, defendants moved for summary judgment. They argued that because plaintiff is unable to identify the benzene-containing products to which he was exposed at any particular time and place, he could not prove that defendants' products caused his illness. On May 10, 2007, this Court denied defendants' motion for summary judgment. The Court's decision was based in large part on the representation of plaintiff's counsel that he would provide the testimony of expert witnesses who could prove that plaintiff was exposed to oil based paints with sufficient levels of benzene to cause his illness.

Following the Court's denial of defendants' motion for summary judgment, a discovery schedule was set. By order of then Magistrate Judge Kiyo A. Matsumoto dated May 17, 2007, fact discovery closed on August 31, 2007, and plaintiffs were ordered to provide expert reports

and disclosures no later than October 1, 2007. Defendants' expert reports and disclosures were due November 1, 2007, and expert discovery was to be completed by December 3, 2007.

Plaintiffs did not submit any expert reports or disclosures by the deadline of October 1, 2007. On November 1, 2007, defendants submitted expert disclosures and the reports of four expert witnesses. On December 3, 2007, Magistrate Judge Matsumoto held a status conference at which both parties appeared, and memorialized it with a Minute Entry stating in part:

> The court was very troubled to learn that plaintiff has not provided expert reports and disclosures, in violation of the court's 5/17/07 order that he do so by 10/1/7. Defendants have provided expert reports and disclosures as ordered, however, plaintiff's counsel represented that neither he nor the plaintiff's experts have reviewed the defense reports. Plaintiff's counsel offered no legitimate excuse for his failure to seek a timely extension of the court's expert discovery order, other than to represent that he was having difficulty obtaining information regarding paint quantities.

Minute Entry, December 3, 2007. Judge Matsumoto "very reluctantly order[ed] that plaintiff be granted one final extension to provide expert reports and disclosures by 1/18/08, and advise[d] plaintiff that he will be precluded if he does not meet this extended date." Id. Plaintiffs still have not submitted any expert reports or disclosures.

## DEFENDANTS' MOTION AND PLAINTIFFS' RESPONSE

Defendants filed the instant motion on April 4, 2008 for dismissal pursuant to Federal Rule of Civil Procedure 41(b) or, alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Defendants argue that plaintiffs have failed to comply with Rule 26(a)(2), which requires the disclosure of certain information regarding a party's expert witnesses, and also with the Court's May 17, 2007 and December 3, 2007 orders, and that these failures merit dismissal of all claims pursuant to Rule 41(b). Defendants argue in the alternative that plaintiffs are now precluded from offering any expert witnesses, which they claim renders

plaintiffs unable to establish an essential element of their claims, namely that defendants' products were the cause of plaintiffs' injuries. As a result, defendants argue, the Court should grant them summary judgment on all counts.

Plaintiffs respond that they are relying on plaintiff's treating physician, Lewis R. Silverman, M.D., to provide expert testimony on issues of general and specific causation. Plaintiffs concede that they have not provided expert reports or disclosures in accordance with this Court's discovery schedule and subsequent order. Instead, they argue that they had previously provided to defendants a report of Dr. Silverman dated April 17, 2002, and a supplemental report dated February 21, 2007.[2] The April 17, 2002 "report" is a one-page letter from Dr. Silverman to plaintiffs' counsel stating, *inter alia*, that he was currently treating Mr. Smolowitz for Myelodysplastic Syndrome; that Smolowitz reported a history of exposure to oil based paints, thinners and benzene during a 35-year period; and that in his opinion it was "likely to a reasonable medical probability, that Mr. Smolowitz's exposure to benzene during the years that he worked as a dry-wall mechanic is causative for his current hematologic condition." Affidavit of Salvatore V. Azzoline, Esq., May 5, 2008 ("Azzoline Aff.") Ex. 7. The February 21, 2007 "supplemental report" is a nearly identical[3] one-page letter to plaintiffs' counsel, which reaches essentially the same conclusion. Neither letter states that Dr. Smolowitz may testify as an expert witness in this case. Plaintiffs argue that these letters, which were previously disclosed

---

[2] Plaintiffs' opposition brief states that the "supplemental report" was dated February 17, 2007. The document itself is dated February 21, 2007.

[3] Indeed, as defendants point out, both the April 17, 2002 letter and the February 21, 2007 letter refer to Mr. Smolowitz as "a 65-year old man who worked as a taper and dry-wall mechanic dating back to the mid-1950s," even though nearly five years passed in between the two letters.

to defendants, "comply with the manner and spirit of F.R.Civ.P. 26(a) and (e)." Plaintiffs Opp. Br. at 2.

## DISCUSSION

I.   The Adequacy of Plaintiffs' Expert Disclosures

The Court first considers whether plaintiffs' asserted expert disclosures satisfy the requirements of Rule 26(a)(2). Rule 26(a)(2) provides that "a party must disclose to the other parties the identity of any witness it may use at trial" to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(A). With regard to experts retained by a party to provide such testimony, the disclosure "must be accompanied by a written report—prepared and signed by the witness." Fed R. Civ. P. 26(a)(2)(B). The rule provides:

> The report must contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Id. Finally, expert disclosures must be made "at the times and in the sequence that the court orders" or, absent a court order, "at least 90 days before the date set for trial or for the case to be ready for trial." Fed R. Civ. P. 26(a)(2)(C). A party that fails to satisfy the Rule 26 disclosure requirements without justification is precluded from offering expert witnesses at trial. Fed R. Civ. P. 37(c)(1); see also, e.g., Design Strategies, Inc. v. Davis, 367 F.Supp.2d 630, 634 (S.D.N.Y. 2005) ("Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." (internal quotation marks omitted)).

When viewed against the requirements of Rule 26(a)(2), plaintiffs' purported expert

–5–

reports are plainly inadequate. Neither of the one-page letters that plaintiffs point to as their expert reports sets forth Dr. Silverman's qualifications as an expert witness, any publications he has authored in the last 10 years, any cases in which Dr. Silverman "testified as an expert at trial or by deposition," or any information regarding the compensation he is to receive. Although Dr. Silverman in his letters opines that Mr. Smolowitz's exposure to benzene likely caused his injuries, Dr. Silverman does not explain the basis for this opinion beyond a generalized statement that benzene is known to be associated with Mr. Smolowitz's condition, and that Mr. Smolowitz reported that he had a history of exposure to benzene. See Giladi v. Strauch, No. 94 Civ. 3976, 2007 WL 415365, *4 (S.D.N.Y. Feb. 6, 2007) ("A report is deficient if it fails to include any of the *underlying conclusions* on which the expert's ultimate opinions are based. Bald conclusions on the ultimate issues do not alone amount to a 'detailed and complete written report' of the expert's expected testimony." (alterations and citation omitted)); see also Fed R. Civ. P. 26(a)(2)(B) advisory committee's note on 1993 amend. (stating that the report should be "detailed and complete . . . stating the testimony the witness is expected to present during direct examination, together with the reasons therefor"). Therefore, Dr. Silverman does not satisfy the requirements for retained experts under Rule 26(a)(2)(B).[4]

Dr. Silverman may be exempt from the report requirement, however, because he is Mr. Smolowitz's treating physician. "The requirement of a written report applies only to those

---

[4] The Court notes that plaintiffs have failed to comply with the separate requirement that expert disclosures be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). Plaintiffs were ordered to provide expert reports and disclosures no later than October 1, 2007. Although plaintiffs now claim that the disclosure of letters from Dr. Silverman to plaintiffs' counsel satisfy plaintiffs' obligations under Rule 26, plaintiffs failed to identify even those letters as their expert disclosures prior to the October 1 deadline. See Oral Argument Tr. at 9-10. Plaintiffs also failed to comply with the Court's order of December 3, 2007, "reluctantly" granting plaintiffs more time to submit expert reports and disclosures.

experts who are retained or specially employed to provide [expert] testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony.  A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." Fed R. Civ. P. 26(a)(2)(B) advisory committee's note on 1993 amend.; see also Byrne v. Gracious Living Indus., Inc., No. 01 Civ. 10153, 2003 WL 446474, *2 (S.D.N.Y. Feb. 25, 2003); Salas v. United States, 165 F.R.D. 31, 33-34 (W.D.N.Y. 1994).  Indeed, some cases suggest that "a treating physician who is called to testify to information acquired solely in that role, as opposed to giving an opinion formulated for trial, is not an expert for purposes of Rule 26(a)(2)(A)" and that treating physicians may render expert opinion testimony regarding causation even without submitting a detailed report.  Byrne, 2003 WL 446474, at *2; see also Salas, 165 F.R.D. at 33-34 (noting disagreement among courts as to whether treating physicians may provide testimony on causation).

  Even if Dr. Silverman may be permitted to provide expert testimony, however, his testimony must be limited to the opinions he has offered in his reports, and the testimony must be based on information that he has acquired in his role as a treating physician.  In hearings before the Magistrate Judge, plaintiffs' consistent position was that they intended to provide an additional expert witness who would testify to causation.  See Oral Argument Tr. at 10.  Plaintiffs have not done so and are now precluded from offering any expert witnesses other than Dr. Silverman.

II.     Dismissal Under Rule 41(b)

Defendants argue that plaintiffs' failure to make expert disclosures merits the sanction of dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides for the dismissal of an action in the event that "the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). The Second Circuit has identified five factors that district courts should consider for guidance in deciding whether to dismiss a case under Rule 41(b):[5]

> (1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) . . . [a] balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) . . . the efficacy of lesser sanctions.

Shannon v. General Elec. Co., 186 F.3d 186, 193-94 (2d Cir. 1999) (quoting Nita v. Connecticut Dep't of Envtl. Protection, 16 F.3d 482, 485 (2d Cir. 1994)); see also Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996). "Generally, no one factor is dispositive." Nita, 16 F.3d at 485.

Although plaintiffs' failure to comply with Rule 26 or the Court's orders is inexcusable, it does not merit dismissal pursuant to Rule 41(b). First, plaintiffs were not on notice that continued failure to submit expert reports and disclosures would result in dismissal. Rather, the Court advised plaintiffs on December 3, 2007 that noncompliance would result in the preclusion of expert testimony. Second, defendants are not prejudiced by further delay because preclusion deprives plaintiffs of any benefit they might expect to receive from delaying the disclosure of potential expert witnesses. In addition, plaintiffs' failures will not further affect the schedule for

---

[5] Neither party has cited any cases discussing the standard for dismissing an action pursuant to Rule 41(b), nor have they addressed the factors that the Court is to consider under Second Circuit precedent.

–8–

this case. Third, plaintiffs' noncompliance does not "further congest the district court's docket." Lucas, 84 F.3d at 535; see also id. at 535-36 ("There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court."). Finally, the "lesser sanction" of preclusion is sufficiently effective as a remedy for plaintiffs' failures; as a result, plaintiffs face difficulty establishing elements of their claims at trial and the potential for summary judgment against them.

This Court concludes, therefore, that dismissal of plaintiffs' claims pursuant to Rule 41(b) is unwarranted.

III.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Furthermore, the court is required to view the evidence in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In order to prevail in a toxic tort case, plaintiffs must present sufficient evidence to support a finding that defendants' products caused plaintiffs' injuries. See Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 268 (2d Cir. 2002). Proof of causation requires establishing both "general" causation and "specific" causation. Id. "General causation bears on whether *the type of injury at issue can be caused or exacerbated* by the defendant's product. 'Specific' causation bears on whether, in the particular instance, *the injury actually was caused*

*or exacerbated* by the defendant's product." Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 251 n. 1 (2d Cir. 2005); see also Amorgianos, 303 F.3d at 268; In re Rezulin Prod. Liab. Litig., 441 F.Supp.2d 567, 575 (S.D.N.Y. 2006).[6] "[P]roof of general causation is a necessary predicate for that of specific causation—if there is no evidence that a product is capable of causing the kind of harm claimed, then there is no basis to accept evidence that the product in fact did so in a specific case." Rezulin, 441 F.Supp.2d at 575.

Under New York law, plaintiffs must establish both general and specific causation through expert testimony. See Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) ("In a case such as this, where an injury has multiple potential etiologies, expert testimony is necessary to establish causation . . . ."); Amorgianos, 303 F.3d at 268 ("[T]o establish their case under New York law, plaintiffs would have to prove that Amorgianos suffered from overexposure to xylene and that he is ill; they are also required to produce expert opinion evidence based on suitable hypotheses in order to support a finding of causation." (internal quotation marks omitted)); Parker v. Mobil Oil Corp., 857 N.E.2d 1114, 1120-22 (N.Y. 2006).[7] As discussed above, plaintiffs have failed to disclose to defendants the identity of any expert witnesses, other than Dr. Silverman, that they may call at trial and are therefore precluded from offering such expert testimony. The question, then, is whether Dr. Silverman's testimony is

---

[6] See also In re Rezulin Prod. Liab. Litig., 369 F.Supp.2d 398, 402 ("General causation is established by demonstrating, often through a review of scientific and medical literature, that exposure to a substance can cause a particular disease (e.g., that smoking cigarettes can cause lung cancer). Specific, or individual, causation, however, is established by demonstrating that a given exposure is the cause of an individual's disease (e.g., that a specific plaintiff's lung cancer was caused by his smoking)." (internal quotation and citation omitted)).

[7] See also Rezulin, 441 F.Supp.2d at 575 ("The plaintiffs here do not contest that they must prove both kinds of causation through expert, not lay, testimony. This is a requirement in every state in which these plaintiffs have brought their claims.")

–10–

sufficient to establish the element of causation.

This court concludes that Dr. Silverman's testimony is inadequate to prove either general or specific causation. The sole opinion Dr. Silverman offers in his letters regarding causation is the conclusory statement that based upon plaintiff's reported history it is "likely to a reasonable medical probability, that Mr. Smolowitz's exposure to benzene during the years that he worked as a dry-wall mechanic is causative for his current hematologic condition." This statement has two substantial deficiencies. First, there is nothing in this statement that suggests that Dr. Silverman is aware of or has quantified the precise amount of Benzene to which plaintiff was exposed. Second, Dr. Silverman does not offer any opinion as to whether that limited level of benzene exposure can cause the disease. As discussed above, plaintiffs have come forward with no other expert to fill in these gaps in the proof. Plaintiffs are, therefore, incapable of proving an essential element of their claims, and defendants are entitled to summary judgment. See Amorgianos, 303 F.3d at 270-71 ("In the absence of any expert evidence as to general causation and a gap in plaintiffs' case with respect to Amorgianos's xylene exposure . . . defendant was entitled to summary judgment because of plaintiffs' failure to present any admissible evidence in support of their theory of causation.")

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERD

Dated: Brooklyn, New York
November 10, 2008

    Carol Bagley Amon
    United States District Judge